by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

In the case of *Park & Tilford Import Corporation* v. *United States*, 26 C. C. P. A. 342, C. A. D. 38, the court upheld the collector's assessment of duty upon whisky without allowance for leakage in a case in which not one of the packages imported, when delivered to the importer, presumptively contained less than 90 percent of the total value of the spirits originally placed therein, some of the bottles having been broken and the whisky having leaked away. It was further held in that case that paragraph 813, *supra*, was enacted by Congress under its constitutional power and that Congress, in effect, in that paragraph instructed collectors to require the importer to pay a higher duty on that liquor which he did import where less than 10 percent of the total value of each package of liquor had been lost in transit.

However, in the instant case the only evidence before us as to the condition of the cases is contained in the inspector's report which is written in ink on the reverse side of the warehouse permit and insofar as we are able to decipher it, is as follows:

Of the within
100 cases released from wharf on DP withdrawal 1¢=11 full 1 broken 16 cartons manifested; not found.
450 ¢ lot 2¢=6 full; 1¢=9 full landed in bad condition each case. 50 cs lot 1 cs=22 full 2 broken bottles.
2 c/s released from wharf for delivery to Whse. in good condition.
Storekeeper reports 1 cs=10 full 1 cs=11 full
(signature)
Of the within one case sent to Whse on C H L # 13.

Even were the affidavit in time the amounts therein stated as missing, which are the same as claimed short in the protest, do not check with the inspector's report. As we read that report it states that only 3 cases out of the 450-case lot contained less than 90 percent of the total value of the whisky originally placed therein, but there is no proof as to whether the bottles were broken or missing. As to the 50-carton lot, each case of which contained 24 four-fifths pints, it appears that in 1 case there were 22 full and 2 broken bottles, indicating leakage or loss. However, no allowance could be made for this in the absence of a timely affidavit.

The only proof which we find sufficient is the report that 16 cartons were manifested and not found. As to that merchandise, the proof is sufficient to show a nonimportation. Under the early cases of *Marriott* v. *Brune*, 9 How. 619, and *Lawder* v. *Stone*, 187 U. S. 281, the collection of revenue upon articles never coming into the country is not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights. The entry shows the 50-carton lot to consist of 24 bottles four-fifths pints each case. We therefore hold that as to 16 cartons of that lot plaintiff's claim that neither regular nor countervailing duty was assessable, should be and the same hereby is sustained. As to all other claims the protest is overruled.

Judgment will be rendered accordingly.

**No. 50591.**—Protests 48390–K, etc., of Rice & Co. Corp. et al. (Boston).

298

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50592.**—Protests 48395–K, etc., of Clyde M. Dinsmoor et al. (Boston).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50593.**—Protests 56648–K, etc., of American Express Co. et al. (Boston).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon on the day of exportation (the "free" rate of exchange for pounds sterling), as certified by the Federal Reserve bank and set forth by the collector on each of the entries. The protests were sustained to this extent.

**No. 50594.**—Protests 61421–K, etc., of C. H. Powell Co. et al. (Boston).

Opinion by EKWALL, J. In accordance with stipulation of counsel the court found that the facts herein agreed upon were such as to bring the case within the holding in *John Barr* v. *United States* (11 Cust. Ct. 88, C. D. 801), which record was incorporated herein. (See *John Barr* v. *United States*, 324 U. S. 83, decided February 5, 1945.) In accordance therewith it was held that the currency of the invoices should be converted at the buying rate in the New York market at noon